UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEENAN G. WILKINS,<br><br>Plaintiff,<br><br>v.<br><br>DAVID O. LIVINGSTON, et al.,<br><br>Defendants. | Case No. 16-cv-07016-JD<br><br>**ORDER** |

Plaintiff, a state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. Previously, while multiple motions for summary judgment were fully briefed and pending, plaintiff filed motions to amend and motions to compel, though he had not first sought the discovery from defendants. The Court vacated all pending motions and permitted plaintiff an opportunity to file a third amended complaint to contain all the claims he wished to pursue. Plaintiff has filed a third amended complaint.

**DISCUSSION**

**STANDARD OF REVIEW**

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id*. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The United States Supreme Court has explained the "plausible on its face" standard of *Twombly*: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**LEGAL CLAIMS**

Plaintiff's allegations arise from his detention at Martinez Detention Facility. Plaintiff was a convicted prisoner who was transferred to Martinez Detention Facility. Plaintiff alleges that his due process rights were violated in being placed in Administrative Segregation ("Ad. Seg.") and retained there, the conditions in Ad. Seg. violated the Eighth Amendment, his rights under the Equal Protection Clause were violated, he was denied access to the courts, a defendant retaliated against plaintiff due to his protected conduct and there was a violation of his medical privacy rights.

**Due Process**

Interests that are procedurally protected by the Due Process Clause may arise from two sources; the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)).

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See id*. at 477-87. Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

Plaintiff alleges that he was placed in Ad. Seg. for eight months for unknown reasons without any due process and he was denied participation in periodic reviews that retained him in Ad. Seg. He also presents allegations that the deprivations while in Ad. Seg. were atypical and significant hardships. This is sufficient to state a due process claim against Livingston, Vanderlind, Vannoy and Wilson.

**Conditions of Confinement and Exercise**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297). Prisoners may be entitled to appropriate materials to clean their cells depending on the overall squalor of the institution. *See Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985).

Exercise is one of the basic human necessities protected by the Eighth Amendment. *See LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993); *Toussaint v. Rushen*, 553 F. Supp. 1365, 1380 (N.D. Cal. 1983), *aff'd in part and vacated in part*, 722 F.2d 1490 (9th Cir. 1984). Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well-being" of prisoners. *See Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979).

Prison officials therefore may not deprive prisoners of regular exercise. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984) *aff'd in part and rev'd in part*, 801 F.2d 1080 (9th Cir. 1986). Although the Ninth Circuit did not specify the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the court held that ninety minutes per week of exercise, which is the equivalent of slightly less than thirteen minutes a day, does not comport with Eighth Amendment standards. *Pierce v. County of Orange*, 526 F.3d 1190, 1212 (9th. Cir. 2008).

Plaintiff alleges that he was in a small unsanitary cell with piles of trash that attracted rodents and he was not provided adequate cleaning supplies. He also alleges that he was denied exercise from February to August 2013 and then from August to October 2013. These allegations are sufficient to proceed against defendants Livingston, Vanderlind and Vannoy.

**Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (evidence of different treatment of unlike groups does not support an equal protection claim).

Strict scrutiny is inappropriate to test the infringement of prisoners' constitutional rights except the right to racial equality. *Johnson v. California*, 543 U.S. 499, 509-15 (2005) (holding that *Turner v. Safley*, 482 U.S. 78 (1987), does not apply to racial classifications in prison). In *Turner*, the Court reiterated the need for judicial deference to the problems of prison administration, holding that when a prison regulation [or practice] impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. at 89.

When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials). The first step in determining whether the inmate's equal protection rights were violated is to identify the relevant class of prisoners to which he belongs. *Furnace v. Sullivan*, 705

F.3d 1021, 1030 (9th Cir. 2013). The class must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. *Id*. at 1031 (affirming district court's grant of defendants' motion for summary judgment because inmate failed to raise triable issue of fact that he was treated differently than any other inmate whom the officers did not know was entitled to a vegetarian meal).

Plaintiff argues that some inmates received due process, outdoor exercise, were able to watch television and were provided legal materials while others were not. Liberally construing this claim at this stage in the proceedings, these allegations are sufficient to proceed against defendants Livingston, Vanderlind, Vannoy and Wilson.

**Access to the Courts and Legal Materials**

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 350-55. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 354-55.

While the Constitution does not require any particular number of pens or sheets of paper, it does require some. *See Gluth v. Kangas*, 951 F.2d 1504, 1510 (9th Cir. 1991). To state a claim, however, there must be a showing that the denial of the materials denied the prisoner the ability to perfect and pursue legal action, i.e. actual injury to court access. *See id*. at 1509 n.2; *see also Allen v. Sakai*, 48 F.3d 1082, 1089-90 & n.9 (9th Cir. 1995) (where state court requires all handwritten entries to be in black ink, ban on use of pens constitutes denial of access to court); *King v. Atiyeh*, 814 F.2d 565, 565 (9th Cir. 1987) (no established minimum postage that state must meet; focus of court is whether plaintiff has been denied meaningful access); *Franklin v. Oregon*, 563 F. Supp. 1310, 1331 (D. Or. 1983) (prisoner with 106 separate actions before court clearly has no trouble getting papers to court, and claim dismissed as frivolous).

Plaintiff states that that on March 1, 2013, he submitted a state case regarding the conditions discussed in this complaint and he submitted the originals of his exhaustion documents but was not permitted to make photocopies. He later had to demonstrate that he exhausted the claim but failed to do so because he no longer had the originals and the case was dismissed. He argues that defendants Livingston, Vanderlind and Vannoy denied him the ability to make photocopies which resulted in an actual injury because his case was dismissed. Plaintiff also argues that he and others were denied access to photocopying and other legal materials such as pens to prepare documents. These claims are sufficient to proceed against defendants Livingston,

Vanderlind and Vannoy.

**Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

Plaintiff contends that defendant Engalstad transferred plaintiff to a different cell without a television in retaliation for plaintiff's filing of complaints with the County Supervisors. Plaintiff states he was then transferred to other cells that did not have a view of the television and had other problems. This claim is sufficient to proceed.

**Medical Privacy**

Courts have recognized a constitutional right to the privacy of medical information in some context. *Seaton v. Mayberg*, 610 F.3d 530, 537 (9th Cir. 2010). The Ninth Circuit suggested in *Seaton*, that "the right to informational privacy is a narrow one, limited only to fundamental rights such as "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Huling v. City of Los Banos*, 869 F. Supp. 2d 1139, 1153 (E.D. Cal. 2012) (quoting *Seaton*, 610 F.3d at 538).

It is unsettled how this right extends to prisoners. *See Birks v. Terhune*, 398 F. App'x 308, 309 (9th Cir. 2010) (affirming dismissal of prisoner's claim that a prison official breached a duty of medical confidentiality, stating "prisoner's privacy interest in medical treatment information yields to prisons' interest in maintaining security") (citing *Seaton*, 610 F.3d at 534-35); *see also O'Neill v. Bannister*, No. 3:12-CV-00030 LRH, 2012 WL 6968937, at *5-*10 (D. Nev. Aug. 29, 2012), *R. & R. adopted, Jan. 31, 2013*, 2013 WL 424467 (D. Nev. Jan. 31, 2013).

Plaintiff argues that he was forced to have conversations with medical personnel through his cell door, enabling other prisoners to hear the discussion. Plaintiff has failed to specifically describe what information was overheard and if it involved a fundamental right. Regardless, he has not identified a viable federal claim. This claim is dismissed with prejudice.

**County as Defendant**

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To properly plead a claim under *Monell*, it is insufficient to allege simply that a policy, custom, or practice exists that caused the constitutional violations. *AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). Pursuant to the more stringent pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009), and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 553-56 (2007), a plaintiff suing a municipal entity must allege sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that plaintiff is entitled to relief. *AE*, 666 F.3d at 636-37 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), which summarized new pleading standards derived from *Iqbal*, *Twombly* and related Supreme Court decisions).

Throughout the third amended complaint, plaintiff repeatedly refers to the county as a defendant and alleges there were various policies, customs and lack of training that led to the constitutional deprivations he suffered. Plaintiff has still not presented sufficient allegations that

7

the alleged constitutional deprivations were pursuant to a county policy, custom or lack of training. Plaintiff's conclusory allegations that a county policy or custom caused the alleged violations fail to plausibly suggest he is entitled to relief. Even with the benefit of multiple amendments and discovery plaintiff still presents the same conclusory allegations with no support. Simply stating that there was a policy that all defendants followed without describing the specific nature of the policy or showing evidence of the policy, is insufficient to state a *Monell* claim and allow defendant to defend itself. *See AE*, 666 F.3d at 636-37. The *Monell* claim against the county defendant is dismissed with prejudice.

**Further Proceedings**

Plaintiff may proceed with discovery and no further Court order is required. Plaintiff may seek to add additional defendants if he identifies them through discovery. The Court will not review motions to compel if the discovery has not been requested from defendants. The Court will not consider late motions for discovery or late motions to compel. Plaintiff has been provided a great deal of time to pursue discovery and this is his final opportunity. The Court again notes that plaintiff has been given considerable leeway in filing multiple motions. Plaintiff is advised that the Court may institute a pre-filing review condition if the number of filings again continues at a similarly high rate.

**CONCLUSION**

1. This case continues on the Third Amended Complaint with respect to the defendants and claims set forth above.

2. In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **ninety-one days** from the date of service, defendant shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56, and shall include as exhibits all records and incident reports stemming from the events at issue. If defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date his summary judgment motion is due. All papers filed with the Court shall be promptly served on the plaintiff.

b. At the time the dispositive motion is served, defendant shall also serve, on a separate paper, the appropriate notice or notices required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 4 (9th Cir. 2003). *See Woods v. Carey*, 684 F.3d 934, 940-941 (9th Cir. 2012) (*Rand* and *Wyatt* notices must be given at the time motion for summary judgment or motion to dismiss for nonexhaustion is filed, not earlier); *Rand* at 960 (separate paper requirement).

c. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the Court and served upon defendant no later than thirty days from the date the motion was served upon him. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

If defendant files a motion for summary judgment claiming that plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), plaintiff should take note of the attached page headed "NOTICE -- WARNING (EXHAUSTION)," which is provided to him as required by *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 4 (9th Cir. 2003).

d. If defendant wishes to file a reply brief, he shall do so no later than fifteen days after the opposition is served upon him.

e. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

3. All communications by plaintiff with the Court must be served on defendant, or defendant's counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

4. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further Court order under Federal Rule of Civil Procedure 30(a)(2) is required before the parties may conduct discovery.

5. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to

do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: November 19, 2019

JAMES DONATO
United States District Judge

**NOTICE -- WARNING (SUMMARY JUDGMENT)**

If defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

**NOTICE -- WARNING (EXHAUSTION)**

If defendants file a motion for summary judgment for failure to exhaust, they are seeking to have your case dismissed. If the motion is granted it will end your case.

You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies. Such evidence may be in the form of declarations (statements signed under penalty of perjury) or authenticated documents, that is, documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers, such as answers to interrogatories or depositions.

If defendants file a motion for summary judgment for failure to exhaust and it is granted, your case will be dismissed and there will be no trial.

| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| KEENAN G. WILKINS,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID O. LIVINGSTON, et al.,<br><br>    Defendants. | Case No. 16-cv-07016-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 19, 2019, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Keenan G. Wilkins ID: #:AN2387
California Healthcare Facility
P.O. Box 32290
Stockton, CA 95213

Dated: November 19, 2019

                                                        Susan Y. Soong
                                                        Clerk, United States District Court

                                                        By: *[signature]*
                                                        LISA R. CLARK, Deputy Clerk to the
                                                        Honorable JAMES DONATO